UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

THINK COMPUTER CORPORATION,

    Plaintiff,

    v.

ROBERT VENCHIARUTTI, in his official capacity as Deputy Commissioner of the California Department of Financial Institutions; **WILLIAM HARAF**, in his official capacity as Commissioner of the California Department of Financial Institutions; **TRACI STEVENS**, in her official capacity as Acting Secretary of the California Business, Transportation and Housing Agency; **JACOB A. APPELSMITH**, in his official capacity as Senior Advisor to the Governor of the State of California; **EDMUND G. BROWN, JR.**, in his official capacity as Governor of the State of California; and **KAMALA HARRIS**, in her official capacity as Attorney General of the State of California,

    Defendants.

FILED
NOV 1 7 2011
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

Case No.: CV11-05496 HRL

**MOTION FOR EXEMPTION FROM LOCAL RULE 3-9(b)**

Judge: Honorable Howard R. Lloyd

## BACKGROUND

Plaintiff in the above-captioned matter respectfully asks the Court to grant an exemption from Local Rule 3-9(b) so that the interests of Think Computer Corporation may be represented by Mr. Aaron Greenspan until such time as Plaintiff deems it necessary to obtain outside counsel. Local Rule 3-9(b) states:

> "**Corporation or Other Entity.** A corporation, unincorporated association, partnership or other such entity may appear only through a member of the bar of this Court."

1

Though not a member of the bar nor trained in the practice of law, Mr. Greenspan is uniquely qualified and able to represent Think Computer Corporation for the following reasons.

## ARGUMENT

### A. Costs of Representation for Complex Litigation Are Prohibitively High

Prior to filing the Complaint in this matter, Plaintiff researched a number of options for professional representation. Many attorneys were unwilling to represent Plaintiff purely due to the esoteric nature of the subject matter surrounding Plaintiff's claims, namely, domestic money transmission law in California, which has only come into existence very recently. Of those few reachable attorneys who were familiar with the California Money Transmission Act and willing to represent Plaintiff, some were unwilling to oppose Defendants, citing prior relationships, and others offered terms of representation that would have made it impossible for Plaintiff to continue to exist.

For example, one attorney quoted an estimated cost of litigation in the "hundreds of thousands" of dollars, and when pressed, demanded a $250,000 retainer, replenished monthly. Given that the statutory minimum for tangible net worth at issue in these proceedings is $500,000, a threshold that Plaintiff presently meets, and given that Plaintiff must maintain adequate net worth to keep its other state money transmission licenses, such a retainer is impractical, if not impossible, to justify.

### B. Plaintiff is Uniquely Positioned to Bring Its Claims to Light

Generally speaking, and as these figures demonstrate, the cost of representation in complex civil litigation proceedings is extremely high, to the point where many companies are unable to enforce their rights for lack of funds, and not because their claims are invalid. Many money transmitters are small startup companies that have absolutely no budget set aside for litigation, yet their existence depends completely upon the laws at issue in these proceedings

(and for that reason many interested companies avoid becoming money transmitters in the first place). Large money transmitters have business incentives not to see the *status quo* changed, even if they simultaneously believe that the laws comprising the *status quo* are unconstitutional. There are very few money transmitters of medium size.

As David Landsman, Director of the National Money Transmitters Association stated in a 2010 interview about the industry, "Unfortunately, I see further consolidation, which means larger companies buying up smaller companies…smaller companies disappearing…I say it's 'unfortunate' because there are a lot of good companies that couldn't make it. The challenges that we have sometimes prove to be too much for them, especially in a down economy: constantly escalating compliance costs; huge competition with each other, so the profit margins are driven down from that end; the problem getting bank accounts continues. So I only see this industry consolidating further, which can only be bad for the consumer" (http://www.youtube.com/watch?v=IK-znY0-yAE). The issues in these proceedings are unlikely to be brought before the Court by multi-national conglomerates or startup companies, and thus Plaintiff is uniquely positioned to argue on behalf of the industry and its customers.

The implicit discrimination inherent in refusing business executives and/or directors the right to represent their own entities *pro se* has been justified by the Court in the past due to concerns over linguistic clarity, wasted time and repetitive motions—concerns which Plaintiff admits are surely valid in many cases, and that the Court has referred to as "the disruptive effect." However, though the Court's rules have been successful in minimizing minor disruptions due to unclear grammar, syntax and style, the prohibition embodied by them in actuality has caused an enormous disruption of an entirely different and economic nature. For when the claims of any class of person are systematically ignored due to policy or rule, economic distortions magnify, and in this case the distortion is magnified in the extreme. Money

transmission laws are the problem that everyone in the payments industry knows about, but that few will talk about, and that virtually none will litigate over, lest a company suffer damage to its reputation or earnings (or both). At present, those remaining companies that have the standing and motivation to fight are effectively rendered ineligible to file by the Court.

Furthermore, the fact that the Court endures the same disruptive effect for *pro se* individuals and sole proprietors suggests that the real problem with corporate *pro se* representation is not the potential ineptitude of the layman practitioner, nor the abstract idea of corporate personhood, but rather, the risk that the revenue streams of the law firms typically engaged to represent these businesses might in some small part dry up. Lawyer profits should not be the Court's concern, nor should they take precedence over the profits of other types of business owners.

### C. The Court's Local Rules Effect Taxation Without Representation

In Palazzo v. Gulf Oil Corporation 764 F.2d 1381 (11th Cir. 1985), the Court ruled that a business owner, Frank Palazzo, could not represent the interests of his corporation despite his repeated attempts to do so. In its ruling, the Court cited a long string of precedential cases dating back to 1824, all consistently interpreting 28 U.S.C. § 1654 in the same limited fashion, excluding corporations from representing themselves "personally" due to the lack of a physical person that might appear.

In 1958, Congress passed the Technical Amendments Act of 1958 (72 Stat. 1650), which amended the Internal Revenue Code of 1954 by creating a new sub-chapter S at the end of chapter 1. Since then, millions of "S corporations," including Plaintiff, have come into being. Instead of being taxed at the corporate level, as corporations typically are, businesses that have availed themselves of a sub-chapter S election pass all of their earnings (or losses) through to

4

their shareholders for tax purposes, of whom there may be no more than 75 (though the initial limit was 10).

The Court's Local Rule 3-9(b) therefore leads to a situation involving taxation without representation, in which shareholders in sub-chapter S corporations are responsible for paying taxes on their business earnings, but are legally not permitted to represent the interests of those businesses. It could be argued, therefore, that in the case of a 100% shareholder of an S corporation who simultaneously desired to represent the company's interests, the Court's imposition of (often expensive) counsel would act as a double tax on the business shareholder, albeit an odd one, mandated by the public sector and payable to the private sector. Regardless, this burden on business owners is the very concept that Congress sought to alleviate fifty-three years ago through the addition of the sub-chapter.

### D. The Attorney-Client Relationship is Inherently Inefficient

The Court's past and present argument, that *pro se* representation by business owners necessitates inevitable delay and error beyond that which comes with professional representation, is at odds with the reality of modern-day corporate litigation, widely characterized by incredible inefficiency and deliberate slowness. Even *pro bono* outside counsel who do not stand to profit from the manufacturing of delay must take time to learn the facts of a case, research applicable legal arguments, and re-express the client's views accurately and coherently. For some clients not otherwise able to accomplish these tasks alone, such assistance is surely welcome, but for other parties possessing the ability to communicate with the Court clearly, effectively, and according to the Federal Rules of Civil Procedure, the addition of an unnecessary and costly proxy is burdensome in the extreme. The Court itself is best served by the most efficient and direct means of communicating with parties available (and for this reason it is also Plaintiff's

belief that *pro se* litigants should automatically be entitled to electronic case filing access without the need for a court order).

### E. Mr. Greenspan is Uniquely Qualified and Moral Character is Not at Issue

In this instance, Mr. Greenspan is uniquely knowledgeable regarding Plaintiff's operations, legal status, and corporate structure. He is also willing and able to represent Plaintiff's interests at no charge to the company, as the company is his own. Relative to Mr. Greenspan, few if any licensed attorneys could truly state that they had more of an interest in representing Plaintiff to the best of their ability in these proceedings.

Mr. Greenspan is the President, CEO, Chairman of the Board, and 100% shareholder of Think Computer Corporation, a sub-chapter S corporation, and has passed the company's income through to his personal tax return since 1998.

In previous rulings, the Court has cited cases where *pro se* applicants demonstrated deficiencies in moral character or an unwillingness to comply with the Court's decisions. Neither factor is at issue in this case. Mr. Greenspan has no criminal record and has never been named as a defendant in a civil trial.

Mr. Greenspan is generally familiar with the Federal Rules of Civil Procedure, having represented Think Computer Corporation before the United States Patent and Trademark Office Trademark Trial and Appeal Board, as well as the company's and his own interests as a plaintiff in small claims court.

### F. The Bar's Exclusivity Encourages Debt at the Expense of Thought

Attending law school with expectation of eventual admission to the bar in today's economic environment typically involves accumulating hundreds of thousands of dollars worth of student loan debt for the average student. Neither Mr. Greenspan nor any other business owner should not be required to amass such a debt in order to qualify to represent their own

interests before the Court (and due to Mr. Greenspan's stock ownership, those interests are exclusively his).

As Clifford Winston wrote in *The New York Times* on October 24, 2011, "It is worth recalling that two of the finest lawyers and civil rights advocates our country has ever produced, Abraham Lincoln and Clarence Darrow, would not be allowed to practice law today under current rules. (Lincoln was self-taught; Darrow attended the University of Michigan Law School but did not graduate.) Eliminating entry barriers and allowing non-lawyers to perform legal services would, among many other gains, ensure that such talents have a place within our legal system."

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Exemption from Local Rule 3-9(b) should be granted.

Respectfully submitted this 16th day of November, 2011.

Aaron Greenspan
Think Computer Corporation
3260 Hillview Avenue
Palo Alto, CA 94304-1226
Phone: +1 415 670 9350
Fax: +1 415 373 3959
E-Mail: legal@thinkcomputer.com

## CERTIFICATE OF MAILING AND SERVICE

I certify that on November 16, 2011, the foregoing **MOTION FOR EXEMPTION FROM LOCAL RULE 3-9(b)** is being mailed via First Class Mail to:

United States District Court
Northern District of California
280 S 1st Street
San Jose, CA 95113

I further certify that on November 16, 2011, a true copy of the foregoing **MOTION FOR EXEMPTION FROM LOCAL RULE 3-9(b)**, as well as true copies of the **MOTION FOR PERMISSION FOR ELECTRONIC CASE FILING** and associated **PROPOSED ORDER**, the **ORDER SETTING INITIAL CASE MANAGEMENT CONFERENCE AND ADR DEADLINES**, the **STANDING ORDER RE: INITIAL CASE MANGEMENT**, the **STANDING ORDER RE: CIVIL DISCOVERY DISPUTES** and the brochure **CONSENTING TO A MAGISTRATE JUDGE'S JURISDICTION IN THE NORTHERN DISTRICT OF CALIFORNIA** are being served via First Class Mail to the following addresses:

**TRACI STEVENS**
Acting Secretary, Business, Transportation
and Housing Agency
State of California
980 9th Street
Suite 2450
Sacramento, CA 95814-2719
traci.stevens@bth.ca.gov

**WILLIAM HARAF**
Commissioner, Department of Financial
Institutions
State of California
45 Fremont Street
Suite 1700
San Francisco, CA 94105-2219
william.haraf@dfi.ca.gov

**ROBERT VENCHIARUTTI**
Deputy Commissioner, Department of
Financial Institutions
State of California
45 Fremont Street
Suite 1700
San Francisco, CA 94105-2219
rvenchiarutti@dfi.ca.gov

**EDMUND G. BROWN, JR.**
Governor
State of California
State Capitol
Suite 1173
Sacramento, CA 95814
nancy.mcfadden@gov.ca.gov
jim.humes@gov.ca.gov

**JACOB A. APPELSMITH**
Senior Advisor to the Governor
State of California
3927 Lennane Drive
Suite 100
Sacramento, CA 95834
jacob.appelsmith@abc.ca.gov

**KAMALA HARRIS**
Attorney General
State of California
1300 "I" Street
Sacramento, CA 95814-2919
kamala.harris@oag.ca.gov

By _____

Aaron Greenspan
President & CEO
Think Computer Corporation
3260 Hillview Avenue
Palo Alto, CA 94304-1226
legal@thinkcomputer.com