United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THINK COMPUTER CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT VENCHIARUTTI, et al.,<br><br>Defendants. | Case No.  11-cv-05496-HRL<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 24 |

Plaintiff Think Computer Corp. ("Think") brings this action against two California state officials for federal constitutional violations arising out of California's Money Transmission Act ("MTA"), and application of the MTA to Plaintiff's proposed money transmission business. *See* Dkt. No. 23. Plaintiff seeks declaratory and injunctive relief. *Id*. Defendants have moved to dismiss Plaintiff's first amended complaint ("FAC"), Dkt. No. 24. Plaintiff filed an opposition, Dkt. No. 30,[1] and Defendants filed a reply, Dkt. No. 31. On April 17, 2012, the court held a hearing on this motion. Dkt. No. 40. Following amendments to the MTA, the court ordered supplemental briefing. Dkt. No. 59. Plaintiff and Defendants each filed a supplemental brief, *see* Dkt. Nos. 62, 63, and a response, *see* Dkt. Nos. 64, 65.

---

[1] Plaintiff filed an opposition to Defendants' motion to dismiss the FAC on February 28, 2012, Dkt. No. 25, and filed a corrected version on March 3, 2012. *See* Dkt. No. 30. Plaintiff also asks the court to take judicial notice of several documents in connection with Plaintiff's opposition. *See* Dkt. Nos. 28, 43, 47. However, because the Court relied on none of these documents in reaching its decision on Defendants' motion to dismiss, the Court denies Plaintiff's request for judicial notice as moot.

ORDER GRANTING MOTION TO DISMISS
11-cv-05496-HRL                                    1

## I. BACKGROUND

Plaintiff Think Computer Corporation is a privately-held Delaware Corporation that developed a money transmission system, "FaceCash," as an alternative to traditional plastic payment cards. FAC ¶¶ 2, 17. Plaintiff brings this suit against Defendants Robert Venchiarutti, in his official capacity as the Deputy Commissioner of the California Department of Financial Institutions ("DFI") and William Haraf, in his official capacity as the Commissioner of the DFI.[2] *Id*. ¶¶ 18–19.

The FAC describes the FaceCash system as an in-person payment system which operates by using a barcode and a digital image of the consumer's face. *Id*. ¶ 2. To make a purchase, a consumer supplies his or her barcode to a merchant, either on a smartphone or piece of paper, and after scanning the barcode, the merchant's FaceCash-enabled cash register would display an image of the consumer's face for the merchant to confirm the consumer's identity. *Id*. FaceCash would then debit funds from the consumer's pre-paid account and transfer the funds to the merchant. *Id*.

The FAC alleges that Think began designing and investing in the FaceCash system in late 2008, before the adoption of a money transmission licensing statute in California, and officially launched FaceCash in May 2010. *Id*. ¶ 40. Around that time, Plaintiff contacted the DFI to ensure it was in compliance with applicable state laws, and was informed that, as of that time, no license was necessary for domestic money transmission. *Id*. ¶ 44. However, as Plaintiff continued to develop FaceCash over the next year, California enacted the Money Transmission Act, which implemented a licensing scheme for domestic money transmission in the state. The MTA went into effect on January 1, 2011. *Id*. ¶ 26.

---

[2] The FAC also names the following Defendants: Traci Stevens, the Acting Secretary of the California Business, Transportation and Housing Agency, Kamala Harris, the Attorney General of California, Edmund G. Brown, Jr., the Governor of California, and Jacob A. Appelsmith, a Senior Advisor to Governor Brown. FAC ¶¶ 20–22. In its opposition, Plaintiff agrees to the dismissal without prejudice of Acting Secretary Stevens, Attorney General Harris, and Governor Brown. Dkt. No. 30, at 1 n.2. The court therefore GRANTS the motion to dismiss as to these three Defendants. Furthermore, Plaintiff asserts that Mr. Appelsmith was removed from the charging allegations in the FAC and was thereby dropped as a Defendant. *Id*. The motion to dismiss is therefore moot as to Mr. Appelsmith.

ORDER GRANTING MOTION TO DISMISS
11-cv-05496-HRL                                        2

As enacted, the MTA imposed the following minimum requirements on applicants for a money transmission license in California: (1) applicants were required to hold at least $500,000 in "tangible net worth," or shareholder equity, at all times; (2) a $250,000 surety bond for companies engaging in money transmission, or a $500,000 surety bond for companies providing stored value products; (3) a non-refundable $5,000 application fee; (4) a criminal background check; (5) a business plan; (6) pro-forma financial statements for three years and audited past financial statements; (7) a formal application; and (8) a pre-application interview. *Id*. The FAC alleges that many other states have less onerous requirements. *Id*. ¶ 33. According to the FAC, the MTA requires all entities wishing to do business in California and with California residents to obtain a license. *Id*. ¶ 39. The MTA provided existing, unlicensed money transmitters with a 180-day grace period through July 1, 2011, after which time they would need to apply for a license with the DFI to continue to operate legally in California. *Id*. ¶ 26.

Following the enactment of the MTA, Plaintiff again contacted the DFI and was told a license was now required for domestic money transmission in California, and DFI scheduled a pre-filing interview for June 14, 2011. *Id*. ¶ 45. At around the time of Plaintiff's pre-filing interview, Plaintiff's average daily money transmission volume was "close to zero," and Plaintiff only finished development of the merchant side of FaceCash at the end of June, 2011. *Id*. ¶ 42.

In advance of its pre-filing meeting with DFI, Plaintiff provided the DFI with its audited 2010 financial statements. *Id*. ¶ 48. The FAC alleges that the statements contained an inadvertent error which made it appear that FaceCash had $145,000 less in tangible shareholder equity than it should have. *Id*. Plaintiff provided the DFI with corrected set of statements three months later, on September 12, 2011. *Id*.

The FAC alleges that at Plaintiff's pre-filing interview, Defendant Venchiarutti expressed hostility toward Plaintiff and Plaintiff's business. *Id*. ¶ 49. The FAC alleges that at the meeting, Defendant Venchiarutti: (1) informed Plaintiff that he would likely need to raise twenty million dollars of venture capital given that in his experience money transmitters required at least three years of business to achieve profitability; (2) expressed his opinion that Plaintiff had indicated an

ORDER GRANTING MOTION TO DISMISS
11-cv-05496-HRL                3

intent to violate the MTA, and allegedly informed Plaintiff that he would "call the Sheriff;" (3) expressed the opinion that Plaintiff was already insolvent and unable to control its rate of spending; (4) highlighted the MTA's power to audit and the MTA's requirement that the reasonable cost of DFI audit examinations be borne by audited companies; (5) stated that the DFI had an unwritten policy of not approving applications filed by money transmission entities with tangible net worth less than one million dollars; (6) when asked if the DFI had received any complaints about FaceCash, told Plaintiff that he thought he had received a complaint about FaceCash from Plaintiff's competitors; and (7) informed Plaintiff at the conclusion of the meeting that he was still welcome to apply for a license in a way that Plaintiff interpreted as indicating that his application would be denied. *Id*.

The FAC alleges that Plaintiff attempted to establish the "true minimum net worth required by the DFI" but was rebuffed by Defendant Venchiarutti. *Id*. ¶ 51. On June 30, 2011, Plaintiff elected to shut down FaceCash in California and nationwide. *Id*. ¶ 52. The FAC alleges that a primary reason for the shutdown was Plaintiff's perception that FaceCash's application would be denied by the DFI. *Id*. Although Plaintiff never submitted an application for a license in California (and was consequently was never rejected), the FAC alleges that Plaintiff feared nationwide rejection because money license applications in other states generally require applicants to indicate if it has ever had a license application rejected. *Id*.

Following the June 14, 2011 meeting and the June 30, 2011 shutdown of FaceCash, Plaintiff raised approximately $500,000 in additional funding, placing Plaintiff's tangible shareholder equity well above the $500,000 statutory minimum at the time. *Id*. ¶ 50.

On October 13, 2011, in response to Plaintiff's "repeated requests," Defendant Venchiarutti issued an order on behalf of the DFI exempting Plaintiff from having to comply with the provisions of the MTA outside of California. *Id*. ¶ 56. According to the FAC, the order was "conditional on Think not providing money transmission services to persons, consumers, merchants and anyone located in California and Plaintiff not advertising, soliciting or holding itself out as providing money transmission services to persons, consumers, merchants and anyone

ORDER GRANTING MOTION TO DISMISS
11-cv-05496-HRL            4

located in California." *Id*. The FAC alleges that this order indicates that the DFI intends to enforce the MTA beyond the state of California on transactions "originating and existing in interstate commerce." *Id*. Plaintiff alleges that further attempts at communication with the DFI were unsuccessful and Plaintiff concluded that the October order was final. *Id*. ¶ 57. Plaintiff alleges that he was left with no further recourse except to apply for a license without knowing the funding requirements in advance. *Id*. ¶ 57.

Plaintiff alleges that as a result of the shutdown of FaceCash, Plaintiff lost actual and potential revenue streams from established FaceCash merchants, and the ability to sign up California consumers for the service. *Id*. ¶ 62. The FAC also alleges that "at least once prospective merchant cancelled his agreement to use Think software for purposes aside from FaceCash." *Id*. Furthermore, Plaintiff alleges that FaseCash's shutdown "badly damaged Think's and [FaceCash CEO] Mr. Greenspan's reputation, and many individuals who learned of the events blamed Think and its management for the interruption in service."[3] *Id*. Finally, FAC alleges that "[d]irectly due to the regulatory uncertainty surrounding the MTA and other MTLs, Plaintiff was subsequently rejected as an investment opportunity by several prominent venture capital firms, eliminating virtually the only source of funding large enough to realistically allow Plaintiff to comply with the MTA." *Id*. ¶ 64.

According to Plaintiff, following the FaceCash shutdown, its competitors were able to conduct money transmission illegally and gain an advantage over Plaintiff. *Id*. ¶ 66. According to the FAC, the DFI has turned a blind eye to the illegal money transmission activities of other entities, and has enforced the MTA arbitrarily. *Id*. ¶¶ 69–70. Plaintiff filed a separate lawsuit against its purported competitors on May 6, 2013, alleging that dozens of technology companies, venture capital firms, and other entities were violating the MTA. *See Think Computer Corp. v. Dwolla, Inc., et al.*, Case No. 13-02054, 2014 WL 1266213 (N.D. Cal. Mar. 24, 2014). Judge Davila dismissed the action on March 24, 2014, finding that Plaintiff lacked standing to pursue its

---

[3] However, it is unclear how service was interrupted given that FaceCash never began operations. *See* FAC ¶ 42.

ORDER GRANTING MOTION TO DISMISS
11-cv-05496-HRL                5

federal law claims and that the court did not have jurisdiction over Plaintiff's state law claims. *Id*.

Following the filing of this lawsuit, the MTA was amended in several respects relevant to this case. *See* A.B. 786, 2013 Reg. Sess. (Ca. 2013). The provision governing the required minimum tangible shareholder equity was extensively amended. *See* Cal. Fin. Code § 2040. Whereas previously the MTA required a minimum of $500,000 in tangible shareholder equity, the new version of the law provides that:

> (a) An applicant shall possess, and a licensee shall maintain at all times, tangible shareholder's equity of two hundred fifty thousand dollars ($250,000) to five hundred thousand dollars ($500,000), depending on estimated or actual transaction volume, as determined by the commissioner based on the factors described in subdivision (c).
>
> (b) The commissioner may increase the amount of net worth required of an applicant or licensee if the commissioner determines, with respect to the applicant or licensee, that a higher net worth is necessary to achieve the purposes of this division based on the factors described in subdivision (c).
>
> (c) When making a determination pursuant to subdivision (a) or (b), the commissioner shall consider the following factors:
>
> > (1) The nature and volume of the projected or established business.
> > (2) The number of locations at or through which money transmission is or will be conducted.
> > (3) The amount, nature, quality, and liquidity of its assets.
> > (4) The amount and nature of its liabilities.
> > (5) The history of its operations and prospects for earning and retaining income.
> > (6) The quality of its operations.
> > (7) The quality of its management.
> > (8) The nature and quality of its principals.
> > (9) The nature and quality of the persons in control.
> > (10) The history of its compliance with applicable state and federal law.
> > (11) Any other factor the commissioner considers relevant.

Cal. Fin. Code § 2040.

The 2013 amendments to the MTA also abolished the DFI and the office of the Commissioner of Financial Institutions. Cal. Fin. Code, § 321(b). The DFI's powers, duties, responsibilities, and functions were transferred to the newly-formed Department of Business Oversight ("DBO"), led by the Commissioner of Business Oversight. Cal. Fin. Code, §§ 300(b),

ORDER GRANTING MOTION TO DISMISS
11-cv-05496-HRL                                        6

320(a), 321(b). Jan Lynn Owen is the current Commissioner of Business Oversight, Dkt. No. 58, at 4, and the public officer responsible for issuing money transmission licenses. Cal. Fin. Code, §§ 2003(g), 2033(b). According to Plaintiff, Defendant Venchiarutti is now Deputy Commissioner of Money Transmission at the DBO's "Division of Financial Institutions." Dkt. No. 65, at 1 n.1.

Finally, the MTA was amended to add § 2010(l), which exempts certain goods or services payment activities from the MTA, including its licensure requirements. *See* Cal. Fin. Code § 2040. In particular, the MTA now does not apply to:

> (l) A transaction in which the recipient of the money or other monetary value is an agent of the payee pursuant to a preexisting written contract and delivery of the money or other monetary value to the agent satisfies the payor's obligation to the payee.

Cal. Fin. Code § 2010(l). "Payee" and "payor" are defined as follows":

> (2) For purposes of this subdivision, "payee" means the provider of goods or services, who is owed payment of money or other monetary value from the payor for the goods or services.
>
> (3) For purposes of this subdivision, "payor" means the recipient of goods or services, who owes payment of money or monetary value to the payee for the goods or services.

*Id*.

The amendments to the MTA went into effect on January 1, 2014. *See* A.B. 786, 2013 Reg. Sess. (Ca. 2013).

## II.  ANALYSIS

The FAC alleges three claims for relief. The first claim is for violations of the United States Constitution's Due Process and Equal Protection Clauses for allegedly extinguishing Plaintiff's right to use property and frustrating its efforts at state licensure. FAC, ¶¶ 73–85. The second and third causes of action are for violations of the Commerce Clause for allegedly regulating interstate and foreign commerce and burdening interstate commerce. *Id*. ¶¶ 86–108. Plaintiff seeks declaratory and injunctive relief as to the California MTA, as well as attorneys' fees under 42 U.S.C. § 1988. *Id*. at 28.

The MTA has undergone significant amendment since the filing of this lawsuit. Most

ORDER GRANTING MOTION TO DISMISS
11-cv-05496-HRL                             7

importantly for purposes of this motion, the MTA was amended to exempt "transaction[s] in which the recipient of the money or other monetary value is an agent of the payee pursuant to a preexisting written contract and delivery of the money or other monetary value to the agent satisfies the payor's obligation to the payee." Cal. Fin. Code § 2010(l). In its supplemental brief, Plaintiff states that "[a]ccording to the plain language of § 2010(l), a payment processor, like Plaintiff, acting as an agent for a retailer (or any person or entity, frankly) pursuant to a written agency agreement that transmits money from a customer (or any person or entity) to the retailer is exempt from the MTA." Dkt. No. 63, at 3. Plaintiff concludes that under this reading of § 2010(l), FaceCash does not need to apply for an MTA license to continue money transmission activities in California. *Id*.

If this reading is correct, and Plaintiff is now exempt from the MTA's requirements, this case is moot. Plaintiff seeks only injunctive and declaratory relief,[4] and "[w]here intervening legislation has settled a controversy involving only injunctive or declaratory relief, the controversy has become moot." *Matter of Bunker Ltd. P'ship*, 820 F.2d 308, 311 (9th Cir. 1987); *see also Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 911 F.2d 1331, 1335 (9th Cir. 1990) ("It would be pointless to enjoin enforcement of a regional plan that is no longer in effect; claims for such relief have been rendered moot by adoption of the [new] Plan. It would be equally pointless to render a declaratory judgment that the [former] Plan is null and void.") (internal quotation marks omitted).

However, to either find this case moot or reach the merits of Plaintiff's claims, the Court would be required to decide in the first instance both the scope of § 2010(l) generally and whether it applies to Plaintiff in particular. Whether this preliminary determination is now ripe for

---

[4] Plaintiff also seeks attorneys' fees and costs under 42 U.S.C. § 1988. Section 1988 allows for the recovery of attorneys' fees by the prevailing party. However, Plaintiff has received no relief on the merits of its claim, and at least one court has held that in cases where a claim is mooted by legislative amendments following the filing of a plaintiff's lawsuit, the plaintiff must show some causal link between the lawsuit and the amendments to recover fees under § 1988. *See Shipman v. Missouri Dept. of Family Services*, 877 F.2d 678, 681-682 (8th Cir. 1989). Plaintiff has alleged no such link, and so has no claim for attorneys' fees under § 1988.

adjudication by this court depends on both "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 200 (1983). "The basic rationale of the ripeness doctrine is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Id*. at 201 (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–149 (1967)).

Several factors suggest that the question of whether FaceCash is exempt from the MTA under § 2010(l) is not fit for judicial decision at this stage.

First, Plaintiff has not applied for a license under the new law, so the DBO has undertaken no factual findings, and the law has yet to be applied to Plaintiff. Nor has the DBO yet promulgated regulations interpreting § 2010(l).[5]

Second, Plaintiff's complaint largely centers on complaints about the opacity and arbitrariness of the $500,000 minimum shareholder equity requirement for MTA licensure in the former version of the law. The former version of § 2040 set no upper bound, and gave the DFI Commissioner authority to increase the equity required for a license at his discretion. The FAC alleges that while $500,000 was ostensibly the minimum, the DFI operated according to a set of unwritten rules that led the DFI to require far more equity than the statutory minimum. However, § 2040 was also amended in 2013. Section 2040 now requires that applicants for MTA licensure have between $250,000 and $500,000 in shareholder equity, and the statute contains detailed criteria by which the Commissioner of the DBO is to determine what amount within that range a particular applicant must hold. Cal. Fin. Code § 2040(a), (c). While the statute apparently still authorizes the Commissioner to require shareholder equity above $500,000 under subsection (b),[6]

---

[5] According to Defendants, the DBO is scheduled to issue regulations on the amendments to the MTA in July, 2015. Dkt. No. 58, at 7–8.
[6] The parties appear to agree that the effect of § 2040(b) is to provide the Commissioner authority to increase the amount of tangible shareholder equity required for a license beyond $500,000, the

ORDER GRANTING MOTION TO DISMISS
11-cv-05496-HRL                  9

such a determination is to be made according to the same enumerated criteria in § 2040(c).[7] While the FAC contains factual allegations regarding the DFI's enforcement of the prior version of the law, these allegations have little bearing on how the new version of the law will be interpreted, particularly in light of the fact that the MTA is now administered by a new agency, the DBO, with a new Commissioner, Jan Lynn Owen. *See* Dkt. No. 88, at 4.

Third, while Plaintiff's Due Process and Equal Protection claims are best characterized as as-applied challenges to the constitutionality of the MTA, Plaintiff's second and third causes of action mount facial attacks under the Commerce Clause. As facial attacks, they rely less on the application of the standards under § 2040 to Plaintiff and its business. However, the uncertainty regarding the proper construction of § 2010(l) weighs against adjudicating Plaintiff's Commerce Clause claims as well. Based on the record before the court, including Plaintiff's description of the FaceCash system, which closely resembles § 2010(l), the court is inclined to agree with Plaintiff that § 2010(l) does indeed exempt FaceCash from licensure under the MTA. In such case, Plaintiff would seem to lack standing to challenge the constitutionality of the MTA. Furthermore, Plaintiff's assertion that even if § 2010(l) should be read to exempt FaceCash, Plaintiff still retains a viable claim through the effective date of the amendments is unavailing. Dkt. No. 63, at 3–4. Plaintiff seeks only declaratory and injunctive relief enjoining Defendants from enforcing the MTA against Plaintiff. FAC, at 28. If FaceCash is exempt from the requirements of the MTA, such relief "is not only worthless to [Plaintiff], it is seemingly worthless to all the world." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106 (1998).

Regarding the second question under the ripeness analysis—hardship to the parties—the Court finds that while Plaintiff may suffer some additional hardship by virtue of the court

---

initial cap set forth in subsection (a). See Dkt. Nos. 62, at 9, 63, at 1–2

[7] Plaintiff argues that because one of the enumerated criteria for increasing the required amount of equity includes "any other factor the commissioner considers relevant," the amount may be increased "for no reason at all." Dkt. No. 63, at 2. The court disagrees that this one factor renders the equity requirement "illusory." Plaintiff has alleged no facts suggesting this is the case, and as Plaintiff has yet to apply for a license under the newly-amended MTA, there appears to be no basis for Plaintiff's conclusion.

ORDER GRANTING MOTION TO DISMISS
11-cv-05496-HRL                           10

1 withholding consideration of its claims, such hardship is unlikely to be significant. Plaintiff
2 already voluntarily shut down FaceCash, not only in California but nationwide. Furthermore,
3 Plaintiff now appears to believe that FaceCash may resume operations without seeking a license
4 under the MTA, and Plaintiff's complaints about the opacity of the minimum equity requirement
5 were largely addressed by amendments to § 2040. On the other hand, the Court's premature
6 construction of §2010(l) and application to Plaintiff's business would preempt the ability of the
7 DBO to interpret the law and render an administrative decision in Plaintiff's case. The Court is
8 mindful that the ripeness doctrine exists, in part, "to protect the agencies from judicial interference
9 until an administrative decision has been formalized and its effects felt in a concrete way by the
10 challenging parties." *Pac. Gas & Elec. Co.*, 461 U.S. at 200.

11 In sum, the Court finds that the issues presented by Plaintiff's claims are not fit for judicial decision, and that withholding consideration of Plaintiff's claims would not subject Plaintiff to undue hardship. The Court therefore concludes that Plaintiff's claims are not ripe for review and that Defendants' motion to dismiss should be granted.

### III. CONCLUSION

The Court finds Plaintiff's claims unripe for judicial review, and therefore GRANTS Defendants' motion to dismiss in its entirety. Because Plaintiff may yet be able to amend its complaint to allege facts indicating that its claims are ripe, the Court dismisses the FAC without prejudice. The Court grants Plaintiff 20 days leave to amend the complaint. Plaintiff must file a first amended complaint no later than May 27, 2015.

**IT IS SO ORDERED**.

Dated: May 7, 2015

_____
HOWARD R. LLOYD
United States Magistrate Judge

ORDER GRANTING MOTION TO DISMISS
11-cv-05496-HRL                          11

5:11-cv-05496-HRL Notice has been electronically mailed to:

Michael Brooks Carroll     carroll_law@sbcglobal.net

Michael James Aschenbrener     mja@aschenbrenerlaw.com, legal@thinkcomputer.com

Peter Keller Southworth     Peter.southworth@doj.ca.gov

Ryan Marcroft     Ryan.Marcroft@doj.ca.gov, janice.titgen@doj.ca.gov, marc.leforestier@doj.ca.gov